**SO ORDERED.**

**SIGNED this 10 day of November, 2009.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| MAINLINE CONTRACTING, INC. | 09-07927-8-RDD |
| DEBTOR | |

### ORDER DENYING MOTION TO TRANSFER VENUE

The matters before the court are the motions to dismiss or, in the alternative, to transfer venue filed by Ferguson Enterprises, Inc. and S.T. Wooten Corporation. A hearing took place in Wilson, North Carolina on November 4, 2009.

Mainline Contracting, Inc. ("Mainline") filed a petition for relief under chapter 11 of the Bankruptcy Code on September 15, 2009. The case was converted to one under chapter 7 on October 15, 2009. Richard D. Sparkman was appointed trustee. Ferguson and S.T. Wooten, who acted as subcontractors on a number of the debtor's jobs, contend that venue in the Eastern District of North Carolina is improper and that the petition should have been filed in the Middle District of North Carolina. Though the motions seek either dismissal or transfer, Ferguson and S.T. Wooten seek only to transfer venue. Boggs Paving, Cemex Construction Materials, HD Supply Waterworks, and APAC-Atlantic, who also acted as subcontractors for the debtor, filed responses in support of

the motion to transfer. At the hearing, Couch Oil advised the court that it, too, supported the motion. The debtor, Branch Banking and Trust Company ("BB&T"), and the trustee oppose the motion.

Mainline's petition lists its address as 150 Golden Drive, Durham, North Carolina. Durham is located in the Middle District of North Carolina. However, the first page of the petition also indicates that the principal assets of the debtor are located at 3043 Tar River Road, Oxford, North Carolina, which is in the Eastern District of North Carolina. The moving creditors contend that venue is improper in the Eastern District pursuant to 28 U.S.C. § 1408, and that the case must be transferred. If venue is proper, they maintain, the case should nonetheless be transferred for the convenience of parties pursuant to 28 U.S.C. § 1412.

Title 28 section 1408 provides, in relevant part:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district–
> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district[.]

28 U.S.C. § 1408. "There is a presumption that a debtor's choice of forum is a proper district for venue purposes and the party challenging a debtor's choice must show by a preponderance of the evidence that the venue is improper." In re Mid Atlantic Retail Group, Inc., 2008 WL 612287 at *2 (Bankr. M.D.N.C. 2008) (citing In re Farmer, 288 B.R. 31 (Bankr. N.D.N.Y. 2002)).

It is undisputed that Mainline's principal office is in the Middle District of North Carolina. However, Mainline contends that its principal assets are located in the Eastern District, and thus venue is proper in the Eastern District. Mainline's schedules list no real property. Among its personal property are a number of bank accounts, accounts receivable, vehicles, and field equipment.

The location of the accounts receivable, vehicles, and field equipment is not ascertainable from the petition.  The Statement of Financial Affairs lists eighteen pending lawsuits in which the debtor is the plaintiff, six of which are pending in counties in the Middle District, and ten of which are pending in counties in the Eastern District.[1]

At the hearing, the parties agreed that the field equipment is stored in Oxford, in the Eastern District, when it is not on job sites.  They disagreed, however, as to which assets constitute the "principal assets" of the debtor.  They also disagreed as to the location of the intangible assets, namely, the accounts receivable.

The moving parties maintain that the debtor's principal assets are its accounts receivable with a scheduled value of $14,500,000.  Those parties contend that because the accounts receivable are payable to the debtor at its Durham office, they are located in Durham and, therefore, the principal assets are located in the Middle District.  They also contend that the debtor's pending lawsuits are a significant asset.  They have stated that those lawsuits were pending in Durham County.  As noted above, however, those lawsuits are pending in several different counties, the majority of which are in the Eastern District.

Mainline and BB&T contend that the accounts receivable are located at the site of the account debtors, not at Mainline's office in Durham.  The court agrees with Mainline and BB&T.  "[T]he situs of an account receivable is the location of the account debtor." In re World of English, N.V., 16 B.R. 817, 819 (Bankr. N.D. Ga. 1982) (citing Harris v. Balk, 198 U.S. 215, 25 S. Ct. 625

---

[1] The Statement of Financial Affairs also lists fourteen lawsuits in which the debtor is the defendant, ten of which are pending in counties in the Eastern District, and four of which are pending in counties in the Middle District.

(1905); see also In re J&L Plumbing & Heating, Inc., 186 B.R. 388 (Bankr. E.D. Pa. 1995) ("If accounts receivable are indeed the debtor's principal asset, such accounts would seem to generally be more properly pursued in the locus of the accounts debtor."); In re Hopewell Int'l Ins. Ltd., 238 B.R. 25, 48 (Bankr. S.D.N.Y. 1999) ("The location of intangible personal property interests such as accounts receivable is the situs of the account debtor or the party whose obligation it is to perform under the contract.").

Using the location of the account debtors as the situs of the accounts receivable, the evidence before the court shows that at least 19 of the debtor's 60 accounts receivable, totaling approximately $7,622,313, are in the Eastern District. *BB&T Ex. 2*. Though the court does not have information on the location of the remaining accounts receivable, the evidence does show that more than one half of the value of the accounts receivable are from account debtors in the Eastern District. In addition, ten of the twenty-eight jobs in progress when the petition was filed were in the Eastern District, generating additional postpetition accounts receivable prior to conversion.

Based on this analysis, it is clear to the court that the debtor's principal assets, including its field equipment, accounts receivable, and pending lawsuits, are located in the Eastern District and that venue is proper under 28 U.S.C. § 1408. The moving parties have failed to meet their burden of showing, by a preponderance of the evidence, that venue is not proper.

Having determined that venue is proper, the court next turns to the question of whether the case should be transferred in the interest of justice or for the convenience of the parties pursuant to 28 U.S.C. § 1412.[2] Again, the moving parties bear the burden of showing by a preponderance of the evidence that the interests of justice or the convenience of the parties would be served by a

---

[2] Section 1412 provides, "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

4

transfer of this case. Mid Atlantic, 2008 WL 612287 at *3 (citing In re Industrial Pollution Control, 137 B.R. 176, 181 (Bankr. W.D. Pa. 1992)). The factors to be considered in determining the convenience of the parties are:

>  (1) the proximity of creditors of every kind to the court;
>  (2) the proximity of the debtor to the court;
>  (3) the proximity of the witnesses necessary to the administration of the estate;
>  (4) the location of the assets;
>  (5) the economic administration of the estate; and
>  (6) the necessity for ancillary administration if a liquidation should occur.

Mid Atlantic, 2008 WL 612287 at *3 (citing In re Commonwealth Oil Refining Co., 596 F.2d 1239, 1247 (5th Cir. 1979)). In determining whether the case was properly filed in this district under § 1408, the court considered the facts as they existed on the date of the petition. Because the case has been converted and a trustee appointed, it is logical for the court to consider the facts as they now exist in determining whether the case should be transferred pursuant to § 1412.

The first factor is the proximity of creditors to the court. The primary secured creditors, BB&T and Hanover Insurance Company, are both represented by Raleigh attorneys. BB&T opposes the motion. Hanover and the other secured creditors did not take a position on the motion. The only tax creditor is in the Eastern District of North Carolina. The debtor's List of Creditors Holding 20 Largest Unsecured Claims lists twelve creditors. Seven creditors are in the Eastern District and four are in the Middle District. As of the date of this order, the claims register contains 196 claims: 63 of the creditors are in the Eastern District, and 44 are in the Middle District.[3] The moving creditors contend that Durham is more convenient than Wilson, but S.T. Wooten and Ferguson do business in both districts, and their attorney is in Raleigh. The other supporting creditors retained an attorney

---

[3] Creditors who filed more than one claim are counted only one time. Out of state creditors using North Carolina counsel are not counted. One creditor using an Eastern District attorney was not counted because the location of the creditor could not be ascertained from the proof of claim.

in Greensboro, and maintain that going to court in Durham is more convenient and cost effective than going to court in Wilson. Based on the evidence, there is insufficient proof to find by a preponderance of the evidence that a majority of creditors are closer to the court in the Middle District.

The second factor is proximity of the debtor to the court. The debtor's officers and equity holders primarily reside in the Eastern District, its attorneys are in the Eastern District, and the debtor chose the Eastern District as its preferred venue. This factor weighs in favor of keeping the case in the Eastern District.

The third factor is the proximity of witnesses necessary to the administration of the estate. As noted above, three of the debtor's officers and equity holders reside in Raleigh, while one resides in Durham. The trustee's auctioneer is located in the Eastern District. A plurality of the debtor's jobs were performed in the Eastern District. There is no evidence of the location of other witnesses necessary to the administration of the estate, and this factor weighs in favor of keeping the case in the Eastern District.

The fourth factor is the location of assets. Though the creditors contend that the assets are primarily located in the Middle District, their argument is based on their assertion that the accounts receivable are located at the debtor's principal place of business. Because the court determined that the proper location of accounts receivable is the situs of the account debtors, the assets are primarily located in the Eastern District. Similarly, the pending lawsuits and the field equipment are primarily located in the Eastern District. Any preference or avoidance actions may be brought as easily in the Eastern District as the Middle District. Therefore, this factor weighs in favor of keeping the case in the Eastern District.

The fifth factor is the economic administration of the estate. The moving creditors contend that the trustee will be able to remain as trustee if the case is transferred to the Middle District, and because the books and records are in the Middle District, the case can be economically administered in the Middle District. The trustee opposes the transfer. He secured the assets and diverted the debtor's mail immediately after being appointed and has not delayed in the administration of the estate. He and his staff are familiar with how cases are administered in the Eastern District, but they would be required to learn new procedures and obtain new forms if the case is transferred. The trustee's auctioneer is prepared to remove the field equipment immediately from its location in Oxford and ready it for sale. Furthermore, the primary unencumbered assets are in the Eastern District. The accounts receivable are fully encumbered, and will most likely be collected by the secured creditors, not the trustee.[4] Finally, this case has been pending since September 15, 2009, has had a great deal of activity, and the court is familiar with the issues in the case. As a result, it is more efficient and economical to administer the estate in the Eastern District.

The sixth factor is the necessity for ancillary administration if a liquidation should occur. The case has already been converted and a trustee appointed. Because the trustee favors keeping the case in the Eastern District, this factor weighs in favor of keeping the case in the Eastern District.

Therefore, considering all the factors enumerated in 28 U.S.C. § 1412, the moving parties have failed to show by a preponderance of the evidence that the case should be transferred for the convenience of the parties.

Finally, the moving parties contend that the case should be transferred in the interests of justice because, they assert, the debtor is forum shopping and chose to file in the Eastern District to

---

[4] While the question of whether the assets are encumbered or unencumbered is not relevant to the location of the assets, it is relevant to the economic administration of the estate.

take advantage of rulings in this district related to subcontractors' lien rights in the cases of <u>In re Harrelson Utilities, Inc.</u>, Case No. 09-02815-8-ATS (Bankr. E.D.N.C. July 30, 2009), and <u>In re Shearin Family Investments, LLC</u>, Case No. 08-07082-8-JRL, 2009 WL 1076818 (Bankr. E.D.N.C. April 17, 2009).  Mainline contends that it is the moving parties who are forum shopping, hoping to transfer the case to the Middle District where a more favorable ruling in regard to the lien rights of subcontractors might be obtained.  If there is any forum shopping here, it seems to be by both parties.

The moving parties have the burden of showing that a change of venue is warranted by a preponderance of the evidence.  That burden has not been met.  The motion to transfer venue is **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**